UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROBERT LEE WOODWARD,<br><br>    Plaintiff,<br><br>  vs.<br><br>CITY OF MENLO PARK, et al.,<br><br>    Defendants. | Case No: C 09-3331 SBA<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. 35 |

Plaintiff brings this *pro se* civil rights action under 42 U.S.C. § 1983 against Defendants stemming from the alleged use of excessive force against Plaintiff during his arrest on February 3, 2007. The parties are presently before the Court on Defendant Officer Ron Venzon's Motion for Summary Judgment. Dkt. 35. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

## I.    BACKGROUND

### A.    PROCEDURAL BACKGROUND

On July 21, 2009, Plaintiff, appearing *pro se*, filed a complaint in this action against the City of Menlo Park ("the City"), alleging that the City violated his Fourth Amendment rights guaranteed under § 1983. On August 8, 2009, the City filed a motion to dismiss Plaintiff's claims, on the ground that no cause of action was alleged upon which the City could be found liable. Dkt. 8. By order dated November 16, 2009, the Court granted the City's motion to dismiss and granted Plaintiff leave to amend his complaint. Dkt. 18. Plaintiff filed a First Amended Complaint ("FAC") on November 23, 2009, naming as defendants the City, Mayor Andy Cohen, the Menlo Park Police Department, Police Chief Bruce Goitia, and Officer Ron

Venzon.  On December 14, 2009, Defendants filed a motion to dismiss certain causes of action and to dismiss defendants Cohen and Goitia.  In response, Plaintiff asserted that his sole cause of action is for excessive force under the Fourth Amendment.  On March 8, 2010, the Court granted Defendants' motion, dismissing certain causes of action against Defendants, and dismissing with prejudice defendants Cohen, Goitia, the City, and the Menlo Park Police Department.  Dkt. 30.  Thus, the only remaining cause of action before the Court is Plaintiff's first cause of action for excessive force against Officer Venzon ("Defendant").

Now, Defendant moves for summary judgment on the grounds that no triable issues of material fact exist with respect to: (1) Defendant's assertion that his use of force during Plaintiff's arrest was objectively reasonable under the circumstances; and (2) Defendant's claim of qualified immunity.  Dkt. 35.  Defendant also asserts that, in the alternative, Plaintiff's claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994).

**B.    FACTUAL BACKGROUND**

**1.    Defendant's Account of Events**

In support of his motion for summary judgment, Defendant submits his declaration, which includes as exhibits the Menlo Park Police Department Misdemeanor Report regarding Plaintiff's arrest on February 3, 2007, the citation Defendant issued to Plaintiff for violation of California Health and Safety Code § 11364 (possession of narcotic paraphernalia), and the Menlo Park Police Department's "Use of Force Policy."  Venzon Decl., Dkt. 36.  Defendant also submits the declaration of his attorney, which attaches transcripts from a suppression hearing and plea hearing in Plaintiff's underlying criminal case.  Flegel Decl., Dkt. 37.

In his declaration, Defendant states that on February 3, 2007, at around 9:48 p.m., he was on duty and on patrol in East Palo Alto as part of the "Operation Safe Streets" task force in which the Menlo Park Police Department was participating.  Id. ¶ 4.  Defendant was in full police uniform and was driving an unmarked police vehicle.  Id.  Defendant was partnered with Officer Joseph Hinkston, who was riding in the passenger seat.  Id.

While driving northbound on Bay Road in Menlo Park, Defendant observed Plaintiff walking northbound on the west side of Bay Road.  Id. ¶ 5.  Defendant drove to the west side

of the roadway and stopped approximately six to eight feet from Plaintiff.  Id.  As he was exiting his patrol vehicle, Defendant told Plaintiff that he was a police officer and asked Plaintiff if he could speak with him.  Id.  Plaintiff continued to walk northbound on Bay Road, and then turned to acknowledge Defendant and asked Defendant what he wanted.  Id.  When Defendant again explained to Plaintiff that he was a police officer and that he wanted to talk with him, Defendant noticed that Plaintiff had placed his left hand in his left-side front pants pocket, removed an unknown object, and proceeded to "cup" his hands over the object in an attempt to conceal it.  Id.  At that moment, Defendant witnessed Plaintiff drop the object to the ground as he continued to walk northbound on Bay Road.  Id.

Defendant states that he immediately walked over to the object and recognized it to be a cocaine base pipe.  Id. ¶ 6.  Defendant further states that, based on his training and experience, he "know[s] that persons who use cocaine base will often attempt to hide or discard the instruments from police to prevent prosecution."  Id.  Defendant explains that he then yelled at Plaintiff to stop.  Id.  Instead of stopping, Plaintiff started running northbound on Bay Road, attempting to flee from the scene.  Id.  Defendant then pursued Plaintiff on foot.  Id.  Defendant states that he "was aware from [his] experience working in the area as a police officer that [he] was in a high crime and high narcotic activity area, and that narcotics offenders often carry some type of weapon."  Id. ¶ 7.  He further states that "because of this, [he] was concerned for [his] safety and the safety of others in the community."  Id.

Defendant caught up with Plaintiff approximately twenty or thirty feet from where he observed Plaintiff dropping the cocaine base pipe.  Id. ¶ 8.  Defendant states that he "was able to wrap both of [his] arms around the upper torso portion of [Plaintiff's] body and used [his] body weight to pull him to the ground, landing on the left side of his body."  Id.  Defendant explains that Plaintiff "did not resist once on the ground, and [Defendant] was able to handcuff him with the assistance of Officer Hinkston without further incident."  Id.  Thereafter, Defendant advised Plaintiff on the scene that he was under arrest for violation of California Health and Safety Code § 11364 (possession of narcotic paraphernalia) and issued Plaintiff a

1  citation. Id. ¶ 9 & Ex. B. Defendant released Plaintiff at the scene. Id. Defendant asserts that
2  Plaintiff "did not complain of any injuries at the scene nor did he appear to be injured." Id.
3  Defendant states that "before [he] was able to catch up to [Plaintiff] and apprehend him,
4  at no time during [Defendant's] pursuit of [Plaintiff] did he put his hands up in the air or
5  comply with [Defendant's] demand that he stop." Id. ¶ 9. Defendant further states that he "did
6  not knee [Plaintiff] in the chest and back nor did [he] kick him in the side or face." Id.

7  **2.     Plaintiff's Account of Events**

8  In response, Plaintiff submits his declaration made under the penalty of perjury. Dkt.
9  38. Plaintiff also attaches as an exhibit to his declaration medical records indicating that he
10 was admitted to the Stanford Hospital's emergency room at approximately 2:00 a.m. on
11 February 4, 2007, he received treatment for a collapsed left lung and multiple left-sided rib
12 fractures, and he was hospitalized for nearly three days for those injuries. Id. Also, the Court
13 notes that Plaintiff verified his FAC by signing it under the penalty of perjury. Dkt. 19. See
14 Keenan v. Hall, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) ("[a] verified complaint may be treated
15 as an affidavit to oppose summary judgment to the extent it is based on personal knowledge
16 and sets forth specific facts admissible in evidence") (internal quotations omitted).

17 According to his verified FAC, Plaintiff avers that on the night of February 3, 2007, he
18 was walking home from his niece's house, "minding his own business," when Defendant
19 pulled up beside him in an unmarked police vehicle and said he wanted to talk to Plaintiff.
20 FAC ¶ 12. Plaintiff continued to walk toward his house because he "did not know who
21 [Defendant] was and [he] was scared." Id. Defendant got out of the vehicle and told Plaintiff
22 to stop. Id. Plaintiff states that he could see that Defendant might be a police officer because
23 he was wearing a uniform. Id. Plaintiff asserts that he "put up [his] hands and surrendered to
24 him." Id. Plaintiff further asserts that "while [his] hands were still up in the air above [his]
25 head and facing [Defendant], [Defendant] tackled [Plaintiff] and threw [him] to the ground."
26 Id. In addition, Plaintiff states that Defendant "is a big man" weighing "over 250 pounds." Id.
27 In contrast, Plaintiff contends that, at the time, he weighed 150 pounds. Id.
28

Moreover, Plaintiff states that Defendant kneed him in the chest and back with such force that he collapsed Plaintiff's lung, and that Defendant also kicked him in his side and face with such force that he fractured five of Plaintiff's ribs. Id. In addition, Plaintiff avers that only after "Defendant beat [him]" did Defendant find the crack pipe that Plaintiff had dropped. Id.

### C.   DEFENDANT'S UNDERLYING CRIMINAL CASE

On February 20, 2007, the San Mateo District Attorney charged Plaintiff with a violation of California Penal Code § 148(a)(1) for "[r]esisting, delaying or obstructing [an] officer" in connection with his February 3, 2007 arrest. See Flegel Decl. Ex. C; Cal. Penal Code § 148(a)(1). On January 17, 2008, as part of a plea agreement, Plaintiff plead *nolo contendere* to the § 148(a)(1) charge, and the narcotic paraphernalia charge was dismissed. Flegel Decl. Ex. C.

## II.   LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" Ricci v. DeStefano, -- U.S. --, 129 S.Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). An issue of fact is "material" if, under the substantive law of the case, resolution of the factual dispute might affect the outcome of the claim. See Anderson, 477 U.S. at 248.

1  Factual disputes are genuine if they "properly can be resolved in favor of either party." Id. at
2  250.  Accordingly, a genuine issue for trial exists if the non-movant presents evidence from
3  which a reasonable jury, viewing the evidence in the light most favorable to that party, could
4  resolve the material issue in his or her favor. Id.  "If the evidence is merely colorable, or is not
5  significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations
6  omitted).
7       A court's function on summary judgment motion is not to make credibility
8  determinations or weigh conflicting evidence with respect to a disputed material fact. See
9  T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The
10 evidence and the inferences drawn from the facts must be viewed in the light most favorable to
11 the nonmoving party. See id. at 631.  If evidence produced by the moving party conflicts with
12 evidence produced by the nonmoving party, the court must assume the truth of the evidence set
13 forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d
14 1152, 1158 (9th Cir. 1999).  A court may not resolve disputed issues of material fact by
15 crediting one party's version of events and ignoring another. Wall v. County of Orange, 364
16 F.3d 1107, 1111 (9th Cir. 2004) ("By deciding to rely on the defendants' statement of fact [in
17 deciding a summary judgment motion], the district court became a jury.").  But "[w]hen
18 opposing parties tell different stories, one of which is blatantly contradicted by the record, so
19 that no reasonable jury could believe it, a court should not adopt that version of the facts for
20 purposes of ruling on a motion for summary judgment." Scott, 550 U.S. at 380.

21 **III.   ANALYSIS**
22      **A.   USE OF EXCESSIVE FORCE**
23      The constitutional right at issue when a law enforcement officer is alleged to have used
24 excessive force during an arrest is the Fourth Amendment right to be free from "unreasonable
25 ... seizures." U.S. Const. amend. IV; see Graham v. Connor, 490 U.S. 386, 394 (1989).
26 "Determining whether the force used to effect a particular seizure is 'reasonable' under the
27 Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on
28 the individual's Fourth Amendment interests against the countervailing governmental interests

at stake.'" Graham, 490 U.S. at 396 (citations omitted).  "To assess the gravity of a particular intrusion on Fourth Amendment rights, the fact finder must evaluate the type and amount of force inflicted.  In weighing the governmental interests involved the following should be taken into account: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.

The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him or her, without regard to underlying intent or motivation and without the "20/20 vision of hindsight."  Id.  Police officers are not required to use the least intrusive degree of force possible; they are required to only act within a reasonable range of conduct.  Forrester v. City of San Diego, 25 F.3d 804, 806 (1994).  Unreasonable force claims are generally questions of fact for the jury.  Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995).  "[W]hether a particular use of force was reasonable is rarely determinable as a matter of law."  Chew v. Gates, 27 F.3d 1432, 1443 (9th Cir. 1994).  However, a defendant can still prevail on summary judgment if the court concludes, after resolving all factual disputes in favor of the plaintiff, that the use of force was objectively reasonable under the circumstances.  Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994).

### 1. Gravity of the Intrusion: Type and Amount of Force Inflicted

Plaintiff claims that Defendant kneed him in the chest and back with such force that he collapsed his lung, and that Defendant kicked Plaintiff in his side and face with such force that he fractured his ribs.  As stated above, Plaintiff has submitted medical records indicating that he was admitted to the Stanford Hospital's emergency room on February 4, 2007, he received treatment for a collapsed left lung and multiple left-sided rib fractures, and he was hospitalized for nearly three days for those injuries.  See FAC.

In response, Defendant argues that the "force inflicted on [Plaintiff] was his being pulled to the ground by [Defendant] in order to apprehend him."  Def.'s Mot. at 11, Dkt. 35.  Defendant further asserts that, while the injuries to Plaintiff's ribs are unfortunate, the injuries

are "consistent with [him] being pulled to the ground and landing on the left side of his body." Id. Defendant also contends, without elaboration, that Plaintiff's medical records do not support his allegation that he was kicked or kneed by Defendant. Lastly, Defendant argues, without reference to any decisional authority, that to the extent Plaintiff alleges that Defendant placed a knee on him while handcuffing him, using a knee to hold down a resisting suspect does not amount to excessive force.

In viewing the evidence most favorable to Plaintiff, the Court finds that a genuine issue of material fact remains with regard to Defendant's actions while arresting Plaintiff, because the evidence produced by Defendant conflicts with Plaintiff's evidence. Put simply, the evidence presented by Plaintiff, including his medical records, could lead a jury to conclude, based on the type and amount of force inflicted – i.e., Defendant's alleged tackling, kicking, and kneeing of Plaintiff after he had raised his hands and "surrendered" – that the force used was unreasonable under the circumstances. Therefore, this factor weighs against finding, on summary judgment, that Defendant's use of force was objectively reasonable.

### 2. Government Interest at Stake

#### a) Severity of the Crime

Defendant concedes that being in possession of a cocaine base pipe is only a misdemeanor. Def.'s Mot. at 12. Defendant also concedes that Plaintiff was released at the scene of his arrest. Id. Nevertheless, Defendant argues that Plaintiff "exacerbated the situation by ignoring the police officers and proceeding to take off running in order to evade arrest." Id. Yet, that assertion is based solely on Defendant's version of events. Under Plaintiff's version, while Plaintiff initially failed to stop in response to Defendant's questioning, once Defendant got out of his vehicle and Plaintiff saw him in full police uniform, Plaintiff stopped and put his hands over his head. FAC ¶ 12. Given these conflicting accounts, this factor also weighs against finding, on summary judgment, that the use of force was objectively reasonable.

#### b) Threat to Safety

Defendant notes that he was patrolling an area plagued with crime and a significant amount of narcotic activity. He states that, based on his experience, narcotics offenders often

carry some kind of weapon.  As such, according to Defendant, he was reasonably concerned for his safety and for the safety of those in the community.  However, "[a] simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern."  Deorle v. Rutherford, 272 F.3d 1272, 1281 (9th Cir. 2001).  Taking Plaintiff's version of events as true, Defendant did not discover the cocaine base pipe that Plaintiff had dropped until after Defendant allegedly "beat" Plaintiff.  FAC ¶ 12.  Therefore, a reasonable jury could conclude that Defendant was not aware that Plaintiff was a narcotics offender at the time force was used.  At bottom, genuine issues of material fact preclude a finding, on summary judgment, that objective factors existed to justify Defendant's alleged fear for his and others' safety.

### c) *Resisting Arrest or Attempting to Evade Arrest by Flight*

Defendant asserts that "this element is satisfied" because Plaintiff plead *nolo contendere* to a violation of California Penal Code § 148(a)(1) for resisting, delaying, or obstructing a police officer in connection with his February 3, 2007 arrest.  Def.'s Mot. at 13.  However, as explained above, the nature of Plaintiff's resistance and/or flight is in dispute.  Moreover, the documents submitted from Plaintiff's underlying criminal proceeding do not specify the exact factual basis for Defendant's plea.  See Flegel Decl. Ex. B.  Thus, the circumstances surrounding Plaintiff's resistance and/or flight, and whether Defendant's use of force was reasonable under those circumstances, remain disputed questions of fact.

After considering the relevant Graham factors, the Court finds that the material fact disputes in this case preclude summary judgment against Plaintiff's claim of excessive force.

**B. QUALIFIED IMMUNITY**

Alternatively, Defendant argues that he is entitled to qualified immunity under the evidence presented.  In considering the merits of a qualified immunity defense in a case involving excessive force during an arrest, the first question is whether the facts alleged indicate that the officer's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the answer is no, there is no need for further inquiry.  Id.  If the answer is yes, the next step is to ask whether the right violated was clearly established.  Id.  This

decisional sequence was modified by the Supreme Court in by <u>Pearson v. Callahan</u>, 129 S.Ct. 808 (2009).  Now, courts are permitted to "exercise … sound discretion in deciding which of the two prongs of the qualified immunity should be addressed first in light of the circumstances in the particular case at hand."  <u>Pearson</u>, 129 S.Ct. at 818.  "Where [an] officer[']s[] entitlement to qualified immunity depends on the resolution of disputed issues of fact in [his] favor, and against the non-moving party, summary judgment is not appropriate."  <u>Wilkins v. City of Oakland</u>, 350 F.3d 949, 956 (9th Cir. 2003).

### 1. Violation of a Constitutional Right

In the first step of the <u>Saucier</u> analysis, the Court must determine whether the facts presented can support the conclusion that Defendant violated Plaintiff's Fourth Amendment right to be free from an excessive use of force.  See <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 651 (9th Cir. 2001).  "Under the Fourth Amendment, officers may only use such force as is 'objectively reasonable' under the circumstances."  <u>Id</u>. (quoting <u>Graham</u>, 490 U.S. at 397)).  The <u>Graham</u> factors identified above are employed under this analysis.  See <u>id</u>.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  <u>Id</u>. (quotations marks omitted).  "The determination of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation."  <u>Id</u>. (quotation marks omitted).

Here, Defendant relies on the same <u>Graham</u> factors addressed above in support of his argument that Plaintiff's Fourth Amended rights were not violated.  Specifically, Defendant argues that he was reasonably concerned for his safety and for the safety of others because he suspected Plaintiff to be a narcotics offender likely to have a weapon, and that Plaintiff's medical records do not support his allegation that he was kicked or kneed by Defendant.  Also, Defendant again notes that Defendant was charged with resisting, delaying, or obstructing a police officer.  For the reasons stated above, the Court concludes that Plaintiff has proffered evidence sufficient to show that there are genuine fact issues as to these factors.  Thus,

Defendant is not entitled to summary judgment as a matter of law on the question of whether Defendant violated Plaintiff's Fourth Amendment right to be free from an excessive use of force.[1]

### 2. Clearly Establish Right

Having found that there are triable issues of fact as to whether Defendant's conduct violated a constitutional right, the second question becomes whether the right violated was clearly established. On this point, the Ninth Circuit has held that the right to be free from excessive force, and the general principle that "force is only justified when there is a need for force," are clearly established. See Blankenhorn v. City of Orange, 485 F.3d 463, 481 (9th Cir. 2007) ("In assessing the state of the law at the time of [plaintiff's] arrest, we need look no further than *Graham's* holding that force is only justified when there is a need for force."). Assuming, as Plaintiff contends, that his hands were up above his head when he was tackled by Defendant, and that Defendant kicked Plaintiff in the face and side and kneed him in the back with force sufficient to collapse his lung and fracture his ribs, these clearly established principles would have given a reasonable officer fair notice that his use of force might have been excessive under the circumstances. Accordingly, summary judgment in favor of Defendant on the issue of qualified immunity is denied.

### C. HECK V. HUMPHREY

Defendant asserts that Plaintiff's § 1983 claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994), in which the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. … A claim for damages bearing that relationship to a conviction

---

[1] Defendant also submits a copy of the Menlo Park Police Department's "Use of Force Policy." According to Defendant, his use of force under his version of events was reasonable because it was consistent with the Policy. However, Plaintiff offers a different version of events, and Defendant has not argued that, even under Plaintiff's version, his actions were consistent with the Policy. Therefore, this document does not contribute to the instant analysis.

>or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed....

Heck, 512 U.S. at 486-87.

Under Heck, "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996). The relevant question is whether success in a subsequent § 1983 suit would "necessarily imply" or "demonstrate" the invalidity of the earlier conviction or sentence. Heck, 512 U.S. at 487.

Here, Plaintiff plead *nolo contendere* to a violation of Cal. Penal Code § 148(a)(1). "Under Cal. Penal Code § 148(a)(1), '[t]he legal elements of a violation ... are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties.'" Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (quoting In re Muhammed C., 95 Cal.App.4th 1325, 1329 (2002)).

However, the Ninth Circuit has held that Heck does not necessarily bar § 1983 actions alleging excessive force despite the plaintiff's conviction for resisting arrest. Specifically, "a § 1983 action is not barred by *Heck* unless the alleged excessive force occurred at the time the offense under § 148(a)(1) was being committed." Smith, 394 F.3d at 699 (citing Sanford v. Motts, 258 F.3d 1117 (9th Cir. 2001)). Thus, "as long as the officers were acting lawfully *at the time* the violation of § 148(a)(1) took place, their alleged acts of excessive force, whether they occurred *before* or *after* [plaintiff] committed the acts to which he pled, would not invalidate his conviction." Smith, 394 F.3d at 699 (emphasis in original); see also Pelayo v. City of Downey, 570 F.Supp.2d 1183, 1203 (C.D. Cal. 2008) ("… the key question under *Smith* is whether the moment at which the criminal violation occurred is separate from the moment at which the constitutional violation occurred"). In the instant case, under Plaintiff's

version of events, he initially ignored and walked away from Defendant, but then stopped and raised his hands when Defendant exited his vehicle. According to Plaintiff, excessive force was not used on him until after he raised his hands and "surrendered" to Defendant. FAC ¶ 12. Therefore, genuine issues of material fact regarding the circumstances surrounding Defendant's use of force also preclude summary judgment under <u>Heck</u>.[2]

## IV. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

1. Defendant's Motion for Summary Judgment is DENIED.

2. A telephonic Case Management Conference is scheduled in this matter for **June 2, 2011 at 3:45 p.m**. The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court. Plaintiff shall be responsible for filing the statement as well as for arranging the conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

3. This Order terminates Docket 35.

IT IS SO ORDERED.

Dated: 3/1/11

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[2] As a final matter, Defendant states that he "wishes to raise for the Court's attention" the fact that Plaintiff, while appearing *pro se*, is actually being assisted in this litigation by his brother, who is an attorney. Def.'s Mot. at 14. Not only does Defendant fail to indicate the relief he seeks based on this allegation, he has failed to support his allegation with any facts in the record. Therefore, the Court finds this allegation to have no bearing on the instant motion.

- 13 -